**Donald LUNDGREN, Plaintiff,**

v.

**Salvatore R. CURIALE, Wendy E. Cooper and James Corcoran, Defendants.**

**No. 91 Civ. 3841 (MEL).**

United States District Court, S.D. New York.

Nov. 10, 1993.

Kantor, Davidoff, Wolfe, Rabbino & Kass, P.C., New York City, for plaintiff; Robin N. Wolfe, of counsel.

Robert Abrams, Atty. Gen., New York City, for defendants; Kathie A. Whipple, Marcie S. Mintz, June Duffy, Asst. Attys. Gen., of counsel.

LASKER, District Judge.

Donald Lundgren brings this action for damages under 42 U.S.C. § 1983 against his former superiors at the New York State Department of Insurance. Lundgren alleges that he was relieved of his duties as Deputy Superintendent at the Department and ultimately dismissed in retaliation for exercising his constitutionally protected right to free speech.

The defendants, Salvatore Curiale, Wendy Cooper, and James Corcoran move for summary judgment under Fed.R.Civ.P. 56(b) on the grounds that there are no genuine issues of material fact precluding summary judgment in their favor, or, in the alternative, because each of them is qualifiedly immune.

## I.

Lundgren was a Deputy Superintendent in the Department of Insurance in charge of the Department's Property Companies Bureau from 1983 until he was dismissed on April 24, 1991. The Bureau regulates over 900 insurers including the various Blue Cross and Blue Shield health insurance plans which op-

erate within the State of New York (the "Blues").

The chain of events that culminated in Lundgren's termination began with the 1987 appointment of Wendy Cooper as First Deputy Superintendent and Lundgren's immediate superior. At that time, and for most of the remainder of Lundgren's employment at the Department, the highest position in the Department, that of Superintendent, was filled by James Corcoran. Salvatore Curiale succeeded Corcoran as Superintendent in June 1990.

Almost immediately after her appointment as First Deputy, Lundgren and Cooper began to differ about the Department's regulatory decisions concerning three Blue Cross plans—Rochester Blue Cross, Buffalo Blue Cross and Empire Blue Cross. According to Lundgren, he came to believe that Cooper's position in these disputes lacked cogency and instead reflected her desire to give favorable treatment to the clients of an Albany law firm, Hinman, Straub, Pigors & Manning, which represented the Blues before the Department.

In his Affidavit in Opposition Lundgren states that he at first spoke privately to Corcoran about what he "suggested ... was Cooper's willingness to accede to Hinman, Straub's wishes." Eventually, however, Lundgren wrote to the office of Governor Cuomo, asserting that Buffalo Blue Cross and Rochester Blue Cross "were engaged in predatory pricing of its HMO product[s]" and that "Hinman Straub was able to reach Wendy Cooper on [these] issue[s]."

On April 1, 1988, Corcoran ordered an inquiry into Lundgren's allegations against Cooper and Deputy Inspector General Kevin Foley reported to Corcoran orally, some four months later, that they were unfounded. On August 23, 1988, Corcoran relieved Lundgren of his responsibilities over health matters. On July 17, 1989, and after Lundgren had written a memorandum to Corcoran to memorialize his concerns regarding Cooper's conduct in December 1988, Corcoran formally relieved Lundgren of his remaining duties.

Thereafter, Corcoran ordered a second investigation into Lundgren's allegations which, like Foley's earlier inquiry, concluded that there was "insufficient evidence to support the allegations by Deputy Lundgren that First Deputy Cooper engaged in conduct designed to favor the clients of Hinman, Straub, Pigors and Manning." Finally, on April 24, 1991, Superintendent Curiale, who succeeded Corcoran in that position, discharged Lundgren because, as he avers, he had become convinced that Lundgren's working relationship with Cooper had been "irreparably damaged" and because the Department could no longer afford to pay Lundgren who, at this point, despite his $80,000 salary, had no remaining duties.

## II.

The First Amendment protects government employees from discharge for speech upon matters of public concern, *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983), unless the employer can show that its interest in the effective functioning of its enterprise outweighed the discharged employee's interest in free expression, *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987); *see also Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). To prevail on a claim under Section 1983, a plaintiff must also establish that the allegedly protected speech was a "substantial factor" or a "motivating factor" in the defendants' actions against him. *Mount Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). A defendant may, however, avoid liability if he can prove that he "would have reached the same decision as to [Lundgren's] employment even in the absence of the protected conduct." *Id.* at 287, 97 S.Ct. at 576.

In the case at hand, the defendants argue that Lundgren's speech was not constitutionally protected because the subject matter of his allegations was not of serious public concern and because the disruption his allegations caused to the effective functioning of the Department outweighed his interest in free expression. They contend further that Lundgren's allegations were not a substantial factor in their actions against him. They

claim instead that Lundgren was relieved of his duties and ultimately discharged because Lundgren "campaigned unceasingly" against Cooper even though two investigations had shown his allegations against her to be meritless. Finally, Cooper argues that Lundgren has offered no evidence tying her to Corcoran's and Curiale's decisions against him and she should therefore be granted summary judgment.

### The Nature of Lundgren's allegations.

■ Even if one discounts the particular prominence health care finance issues have recently obtained in the public eye, there can be no doubt that the subject matter of Lundgren's allegations was of serious public concern. Lundgren charged that Cooper's decisions regarding the regulation of the Blues showed that she was potentially corrupt and that her decisions allowed the Blues to engage in illegal predatory pricing. Such allegations of specific wrongdoing in the discharge of public duties have repeatedly been held to be of public concern. See Rookard v. Health & Hosps. Corp., 710 F.2d 41, 46 (2d Cir.1983) ("An allegation of corrupt and wasteful practices at a large municipal hospital ... obviously involves a matter of public concern."); Vasbinder v. Ambach, 926 F.2d 1333, 1340 (2d Cir.1991) (Defendants conceded that allegations of "potential fraud, theft and misallocation of funds [ ] were matters of serious public concern."); Connick v. Myers, 461 U.S. at 148, 103 S.Ct. at 1691 (Speech was not of public concern because it did not "seek to bring to light actual or potential wrongdoing or breach of public trust.").

Giacalone v. Abrams, 850 F.2d 79, 86–87 (2d Cir.1988), on which the defendants rely, did not concern allegations of the caliber raised by Lundgren. The employee's speech in Giacalone merely concerned the conduct of a dispute between his office and the IRS about which there was "room for legitimate difference of opinion." Id. at 87.

In sum, I conclude as a matter of law that Lundgren's allegations were of public concern. See Connick v. Myers, 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7 ("The inquiry into the protected status of speech is one of law, not fact.").

### The effect of Lundgren's allegations.

■ The defendants have furnished next to no evidence to substantiate their claim that Lundgren's allegations interfered with the effective functioning of the Department. As the record stands, it appears that all of Lundgren's allegations of wrongdoing by Cooper, with the exception of his memorandum to the Governor's office, were expressed privately to Corcoran. The only evidence that Lundgren continued to "rehash" health insurance issues that had already been decided with other employees is a single letter to James Clyne, Deputy Superintendent in the Albany office of the Department, which was cc'd to a handful of other employees. There is no evidence, or even a claim by the defendants, that Lundgren expressed his concerns to any of his 125 subordinates in the Property Companies' Bureau apart from the few to whom he sent copies of his letter to Clyne. Moreover, although Lundgren's relationship with Cooper was undoubtedly affected by his allegations against her, there is a factual dispute as to the degree to which even that relationship was impaired. Finally, responsibility for whatever disruption was caused by the investigations into the allegations certainly cannot be laid solely at Lundgren's feet since, after all, the investigations were initiated by Corcoran.

It is true, as the defendants point out, that Lundgren was a high level employee of the Department and that his conduct potentially posed a greater danger to its effective functioning than that of a subordinate. See Rankin v. McPherson, 483 U.S. at 390, 107 S.Ct. at 2900 ("The burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails.") Although the level of disruption a high-level employee can cause before his First Amendment interests are outweighed by his employer's efficiency interests is lower than that of, for example, a file-clerk, the level is not so low as to tip the balance in the defendants' favor in this case on the basis of the modicum of evidence of disruption they have furnished so far.

On the present record Lundgren's First Amendment interests appear to have outweighed the defendants' interest in the effective functioning of the Department. However, in view of the Court of Appeals' cautioning statement in *Vasbinder v. Ambach,* 926 F.2d at 1340, that there are some "cases in which the question of the degree to which the employee's speech could reasonably have been deemed to impede the employer's efficient operation would properly be regarded as a question of fact, to be answered by the jury prior to the court's application of the *Pickering* balancing test," a final decision on this point is deferred until trial.

The defendants' argument that no reasonable jury could find that Lundgren's allegations were a substantial factor in the defendants' actions against him is without merit. In fact, the reasons given by the defendants for their actions against Lundgren can be viewed as supporting his allegations. In effect, the defendants claim that Lundgren's allegations and their aftermath became so disruptive to the Department that Lundgren had to be fired. That claim—unlike, for example, a claim that an employee was fired for his incompetence—does nothing to disprove Lundgren's claim that his allegations were a substantial factor in his dismissal.

*Cooper's involvement in the actions against Lundgren.*

▮ Nor is Cooper entitled to summary judgment on her contention that Lundgren has offered no evidence that she was personally involved with the alleged civil rights violations. Although, unlike Corcoran or Curiale, Cooper did not relieve Lundgren of any duties or dismiss him, the evidence establishes at least that Cooper was present in Corcoran's office during and immediately prior to Lundgren's removal from his responsibilities over health matters, and that Cooper met with Ellen Conovitz (variously described as "one of the Governor's appointments persons" and "the Governor's personal Secretary and, subsequently, his Appointments Secretary") at the Governor's office on her own initiative to discuss Lundgren's case the day before that event. While the cumulative effect of the evidence against Cooper is not overwhelming, it is sufficient for Lundgren at this time since "[o]n summary judgment, the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962)).

"Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." *Krishna v. Colgate Palmolive Company,* 7 F.3d 11 (2d Cir.1993) (collecting cases). For the reasons stated above, the defendants' general motion for summary judgment is denied.

### III.

▮ The defendants argue in the alternative that they should be granted summary judgment on the basis of qualified immunity. Government officials performing discretionary functions are entitled to such immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The defendants maintain that each of them should be held to be immune because it was objectively reasonable for each of them to believe that their respective actions against Lundgren did not violate his rights. They maintain that Lundgren has not offered sufficient evidence that their actions against him were improperly motivated and that, even if they acted in part to retaliate against Lundgren, they are nevertheless qualifiedly immune under the "dual motive" test of *Mt. Healthy* because they were also motivated by "logical reasons for discharge." In addition, Corcoran contends that he is qualifiedly immune because his sole action was to remove Lundgren's duties, not to dismiss him.

The Court of Appeals has held that "even if the contours of the plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts

complained, the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights." *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987). Although this route to exoneration has its principal focus on the particular facts of the case "it too may lead to summary judgment if the defendant 'adduce[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ]' to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Id.* (quoting *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986)).

The defendants here cannot make that showing. As discussed in Section II, a jury could reasonably conclude that the defendants' actions against Lundgren were retaliatory. Since there are open fact questions with regard to the defendants' motives in acting against Lundgren and the evidence must be seen in the light most favorable to Lundgren, the defendants' claim that it was objectively reasonable for them to believe that their actions did not violate Lundgren's rights must be rejected.

■ The defendants' "dual motive" argument is unpersuasive for the same reason. A reasonable jury could conclude that the defendants actions were retaliatory and that they would not "have reached the same decision as to [Lundgren's] employment even in the absence of the protected conduct." *Mount Healthy City Bd. of Educ. v. Doyle,* 429 U.S. at 287, 97 S.Ct. at 576.

It is true that, as the defendants point out, some circuits have imposed a heightened evidentiary requirement on plaintiffs opposing a qualified immunity defense. *See, e.g., Martin v. D.C. Metro. Police Dep't,* 812 F.2d 1425, 1435 (D.C.Cir.1987) ("[P]laintiff ... must come forward with something more than inferential or circumstantial support for his allegation of unconstitutional motive. That is, some direct evidence that the officials' actions were improperly motivated must be produced ...").

However, the Second Circuit has not articulated such a rule. Moreover, the facts of *Martin v. D.C. Metro. Police Dep't* distinguish it from this case. The complaint in *Martin* set forth a convoluted claim that police officers, who admittedly had no connection to an incident in which Martin claimed he had been "shoved ... through a glass window [and beaten] with nightsticks," had allegedly "conspired to develop an unlawful scheme to deflect attention from their actions and to deter plaintiff from seeking to vindicate his rights." *Martin v. D.C. Metro. Police Dep't,* 812 F.2d at 1427 (alteration in original). That claim was sufficiently unlikely to have merit on its face to justify requiring the plaintiff to come forward with "some direct evidence that the officials' actions were improperly motivated." Lundgren's case, in contrast, concerns a high level public official censured and ultimately discharged by his superiors for reasons that without question at least originated from his allegations of wrongdoing against one of his superiors in matters of public concern.

■ Corcoran's argument that he is qualifiedly immune because he merely removed Lundgren's duties without actually dismissing him is unpersuasive. The Supreme Court "has frequently reaffirmed that speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection [and] *Pickering v. Board of Education* followed from this understanding of the First Amendment." *Connick v. Myers,* 461 U.S. at 145, 103 S.Ct. at 1689 (citations omitted). Corcoran relieved Lundgren of all his duties in July 1989 and permitted that situation to continue until Corcoran himself resigned six months later. The sanctioning of a high public official such as Lundgren by publicly relieving him of all his duties can certainly chill the exercise of an employee's right to free expression. Indeed, the Court of Appeals has specifically held that governmental action short of discharge may violate an employee's first amendment rights. *Lieberman v. Reisman,* 857 F.2d 896, 900 (2d Cir.1988) (Unfavorable patronage actions not rising to the level of discharge may support a claim under 42 U.S.C. § 1983). In sum, Corcoran is not entitled to qualified immunity because it was

not objectively reasonable to believe that removing all of Lundgren's duties fell outside the protective ambit of *Pickering* and its progeny.

\*     \*     \*

The defendants' motion for summary judgment is denied. The determination of the merits of Lundgren's allegations must await the full development of the facts at trial.

It is so ordered.