■ WILLIAM J. KELLY, Respondent, v NEW YORK STATE EXECUTIVE DEPARTMENT et al., Defendants, and ORIN LEHMAN, Individually and as Commissioner of the Office of Parks, Recreation and Historic Preservation, et al., Appellants. [611 NYS2d 350] —White, J. Appeal from an order of the Supreme Court (Conway, J.), entered May 10, 1993 in Albany County, which denied the motions of defendants Orin Lehman and Albert E. Caccese for summary judgment dismissing the complaint against them.

On the pretext that he needed money to cover the gambling debts of a relative, defendant Albert E. Caccese, who was then Chief Counsel of defendant Office of Parks, Recreation and Historic Preservation (hereinafter OPRHP), obtained a $25,000 loan in 1983 from OPRHP's Commissioner, defendant Orin Lehman. Subsequently in 1986 Caccese, who was then Executive Deputy Commissioner of OPRHP, obtained a $2,500 loan from plaintiff, the Regional Director of the Saratoga/Capital District Region of OPRHP, telling plaintiff that he was going to invest the money in a real estate venture. Between March 1987 and May 1987, plaintiff loaned Caccese an additional $22,500.* In addition to these loans, Caccese also obtained loans from the golf pro concessionaires at the Saratoga

---

* The record shows that Caccese repaid the loans in full.

State Park at a time when the concessionaires had submitted license renewal applications to OPRHP.

As the result of an investigation conducted in 1988 by the State Inspector General's office, Lehman learned of Caccese's gambling problem and his practice of obtaining loans from OPRHP employees. In the summer of 1988, plaintiff also learned that Caccese had not been investing the loan proceeds in a real estate venture but rather had used the money to finance his gambling habit.

Upon obtaining this knowledge, plaintiff advised Caccese that he was no longer willing to lend him money. Thereafter, in October 1988, an Assistant Commissioner of OPRHP told plaintiff that he was on a "hit list". Plaintiff nevertheless remained in his position until February 22, 1991, at which time he was demoted with a resultant $25,000 loss in annual salary. On March 12, 1991, plaintiff met with Lehman for the dual purpose of asking him to reinstate him to his position and to advise him that he had informed the Inspector General's office that Caccese had obtained loans from concessionaires. Lehman allegedly told plaintiff that, if he had come to him sooner, he might have been able to prevent his demotion.

Because he was not reinstated, plaintiff commenced this action under 42 USC § 1983 against his former superiors, among others, alleging that he had been demoted in retaliation for exercising his 1st Amendment right of free speech. Following the completion of discovery, Lehman and Caccese (hereinafter collectively referred to as defendants) moved for summary judgment dismissing the complaint against them. Supreme Court denied their motions and this appeal ensued.

A defendant moving for summary judgment has the initial burden of coming forward with admissible evidence showing that, as a matter of law, the plaintiff's cause of action has no merit (see, GTF Mktg. v Colonial Aluminum Sales, 66 NY2d 965, 967). In this instance, defendants' burden is to show either that the conduct at issue was not protected speech or that the speech did not play a substantial part in their decision to demote plaintiff (see, Mt. Healthy City School Dist. Bd. of Educ. v Doyle, 429 US 274; Ezekwo v New York City Health & Hosps. Corp., 940 F2d 775, 780-781, cert denied — US —, 112 S Ct 657). Alternatively, defendants can satisfy their burden by establishing the defense that plaintiff would have been demoted regardless of the protected speech (see, Shands v City of Kennett, 993 F2d 1337, 1343, cert denied — US —, 114 S Ct 880). In the event that defendants make the

requisite showing, plaintiff can defeat their motions by coming forward with admissible evidence creating a triable issue of fact (see, Zuckerman v City of New York, 49 NY2d 557, 560).

We need not determine if plaintiff's conduct was protected speech as defendants did not raise that issue before Supreme Court (see, Agostino v Monticello Greenhouses, 166 AD2d 471, 472; David Sanders, P. C. v Sanders, Architects, 140 AD2d 787, 788). Instead, they contended that plaintiff's demotion was attributable solely to budgetary reasons and his mediocre job performance. To support this argument, defendants submitted an affidavit from Lehman who pointed out that it became clear in 1990 that there was going to be a drastic reduction in OPRHP's workforce due to adverse economic conditions. Accordingly, in November 1990, Lehman directed a committee, consisting of Caccese and six other members of his executive staff (hereinafter the Executive Committee), to evaluate which high level positions and employees could best be spared. The Executive Committee unanimously recommended in February 1991 that plaintiff be demoted in view of his "long history of consistently mediocre performance" and that he be replaced by John Sheridan, who was regarded as a superb employee. In further support of their position, defendants submitted affidavits from six of the seven members of the Executive Committee, three OPRHP regional directors who served with plaintiff and four OPRHP officials who served under plaintiff, all attesting to the Executive Committee's assessment of plaintiff's job performance. Lehman further argues that plaintiff's protected conduct could not have influenced his decision as he had no knowledge that Caccese had private financial dealings with concessionaires and plaintiff or that plaintiff had filed a report with the Inspector General until he met with plaintiff in March 1991, several weeks after plaintiff had been demoted.

Plaintiff challenged defendants' contention with proof that, as early as September 1990, which was two months prior to the formation of the Executive Committee, Sheridan was unequivocally told by Caccese and OPRHP's Director of Financial Administration that he would be replacing plaintiff. Additionally, plaintiff points out that Caccese admitted that he was advised well in advance of the Executive Committee meeting that plaintiff would make known Caccese's financial dealings with co-workers. Lastly, plaintiff contends that defendants' claim that his job performance was mediocre is rebutted by his employment evaluations which, with the exception of one

period, show that plaintiff was rated "effective" throughout his career.

Courts have traditionally held that summary judgment is inappropriate where the issue is whether the protected conduct of the plaintiff was a substantial or motivating factor in an adverse employment decision because, without a searching inquiry, those intent on punishing the exercise of constitutional rights could easily mask their behavior behind a complex web of post hoc rationalizations (see, Peacock v Duval, 694 F2d 644, 646; see also, Shands v City of Kennett, 993 F2d 1337, 1343, supra; Cox v Dardanelle Pub. School Dist., 790 F2d 668, 675). This case is not an exception to the general rule because plaintiff has come forward with sufficient evidence, particularly his job evaluations, which cast doubt on defendants' claim that plaintiff's job performance was mediocre and from which it can be reasonably inferred that his protected conduct was a substantial or motivating factor in his demotion. Accordingly, because Lehman and Caccese were actively involved in the events culminating in plaintiff's demotion, Supreme Court's denial of their motions for summary judgment was proper (see, Lundgren v Curiale, 836 F Supp 165, 169). Thus, we affirm the order of Supreme Court.

Cardona, P. J., Mercure, Casey and Weiss, JJ., concur. Ordered that the order is affirmed, with costs.

