Patricia FRY, Plaintiff,

v.

H. Carl McCALL, et al., Defendants.

No. 95 Civ. 1915 (JGK).

United States District Court,
S.D. New York.

Nov. 13, 1996.

Robert L. Herbst, Herbst & Greenwald L.L.P., New York City, for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York by Jeffrey I. Slonim, Assistant Attorney General, New York City, for Defendants.

## OPINION AND ORDER

KOELTL, District Judge:

In her Second Amended Complaint, the plaintiff, Patricia Fry, alleges that the defendants deprived her of her constitutional rights in violation of 42 U.S.C. § 1983. Section 1983 provides a cause of action against any person who, under color of state law, deprives another of their federal rights, privileges or immunities. See 42 U.S.C. § 1983. Fry alleges violations of her rights under the First and Fourteenth Amendments to the United States Constitution, together with state law claims for defamation, breach of contract and violations of the New York

State Civil Service Law.[1] The plaintiff has sued defendants H. Carl McCall, Comer S. Coppie, and Rosemary Scanlon.

The defendants have now moved, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss all of the claims against them. Under Rule 12(b)(1), the defendants argue that because the Eleventh Amendment to the United States Constitution prevents a state from being sued in federal court, this Court lacks subject matter jurisdiction over the claims against them in their official capacities. The defendants further argue that all remaining claims must be dismissed, pursuant to Rule 12(b)(6), because, for each of these causes of action, Fry has failed to state a claim upon which relief can be granted.

In her Second Amended Complaint, Fry alleges the following facts. On or about September 13, 1993, Fry was appointed the Director of the Bureau of Agency Analysis of the Office of the State Deputy Comptroller for the City of New York (OSDC). (Second Amended Complaint at ¶ 80). The OSDC is a division of the State Comptroller's Office and the Deputy Comptroller for the City of New York can perform any of the powers and duties of the State Comptroller. (Id. at ¶¶ 19–20).

Fry was appointed to her position at OSDC by defendant H. Carl McCall, the Comptroller of the State of New York at that time. (Id. at ¶¶ 4, 80). During the relevant time period, defendant Comer S. Coppie was First Deputy Comptroller of the State of New York. (Id. at ¶ 6). From in or about September of 1993, defendant Rosemary Scanlon was Assistant State Deputy Comptroller for the City of New York and the Acting State Deputy Comptroller for the City of New York. (Id. at ¶ 9). According to the complaint, Coppie and Scanlon were Fry's immediate supervisors. (Id. at ¶¶ 70, 87).

According to Fry, in mid-March, 1994 Coppie informed her that she was probably going to be fired for not getting along with her staff. (Id. at ¶ 125). Coppie told Fry that he had advised McCall that Fry would not cause trouble if she was fired. (Id at ¶ 126.) Fry alleges that at that time she requested an opportunity to meet with McCall to "make her case." (Id. at ¶ 127). She further alleges that the defendants never offered her or her attorney the opportunity to rebut the charges against her. (Id. at ¶ 129).

Fry was terminated by the defendants effective March 24, 1994. (Id. at ¶ 131). Fry alleges that after her termination the defendants and other management personnel at OSDC told OSDC staff members that Fry was fired because Fry could not get along with the defendants. (Id. at ¶ 132). Fry further alleges that this justification was passed along to reporters through the defendants' spokesman, and was widely published in newspapers throughout New York State. (Id. at ¶ 132).

Fry asserts that she had a good relationship with her staff and supervisors, and was actually fired because of her "professional speech." (Id.). Specifically, Fry alleges that she was fired for voicing concerns about the audit reports being issued by the OSDC. (Id. at ¶¶ 135–38). She argues that she was fired for objecting to supervisors' editing of the reports she had produced. (Id.). She further alleges that this editing was an attempt to downplay the urgency of looming budget deficits faced by the City of New York. (Id.). Fry also asserts that she was fired for objecting to OSDC's issuing reports that were inaccurate, incomplete, and misleading. (Id.).

Based on all of these factual allegations, Fry argues that she was dismissed for speaking out on a matter of public concern, and was therefore fired in violation of her First Amendment rights. (Id. at ¶ 139). Fry also asserts that her termination, without being given the opportunity to respond to the charges against her, deprived her of due process of law. (Id. at ¶ 142). Fry further asserts that she is entitled to a "name-clearing" hearing because the defendants made false statements about her that "struck at

---

1. The Second Amended Complaint also states claims against the defendants based on the Fifth Amendment to the United States Constitution.

However, at oral argument, all such claims were withdrawn by Fry.

the very heart of her professional competence." (Id. at ¶ 143). She alleges that the defendants, acting under color of law, deprived her of her constitutional rights and therefore violated 42 U.S.C. § 1983.

Fry, relying on this Court's supplemental jurisdiction, also asserts state causes of action against the defendants. Fry alleges that she was defamed by the public reasons given by the defendants for her termination. She also argues that her termination was a breach of her implied employment contract. Fry also asserts a claim under New York Civil Service Law § 75–b, which protects public employees from retaliation by their employers.

## I.

The defendants argue, pursuant to Federal Rule of Civil Procedure 12(b)(1), that this Court lacks subject matter jurisdiction over many of Fry's claims. Specifically, the defendants argue that all claims against them in their official capacities are barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "The Supreme Court has consistently held that the federal courts lack jurisdiction not only over suits against a state brought by citizens of other states, as the literal language of the Amendment provides, but also over suits against such states brought by their own citizens." *Dwyer v. Regan,* 777 F.2d 825, 835 (2d Cir.1985), *modified,* 793 F.2d 457 (1986) (citing *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974)).

"Actions against state officials are also barred by the [Eleventh] Amendment where the relief granted would bind the state or where the state is the real party in interest." *Russell v. Dunston,* 896 F.2d 664, 667 (2d Cir.), *cert. denied,* 498 U.S. 813, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990); *see also Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984). The state is the real party in interest when a state officer is sued in his or her official capacity. *See Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985).

However, a suit against a state official in his or her official capacity, arising under federal law, is not barred by the Eleventh Amendment if it seeks prospective injunctive relief, rather than monetary damages. *Dube v. State Univ. of New York,* 900 F.2d 587, 595 (2d Cir.1990), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991); *Russell,* 896 F.2d at 667–68. Thus, while Fry's claims against the defendants in their official capacities seeking damages under § 1983 are barred by the Eleventh Amendment, Fry's federal claims for reinstatement against the defendants in their official capacities are not barred by the Eleventh Amendment. *Dwyer,* 777 F.2d at 835–36 (citing *Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972)); *see also Russell,* 896 F.2d at 667 (reinstatement to medical leave not barred by Eleventh Amendment).

In contrast, whether a plaintiff seeks injunctive relief or monetary damages, any *state law* claim brought in federal court against a state official in his or her official capacity is barred by the Eleventh Amendment, unless the state has waived its immunity against such a suit. *Pennhurst,* 465 U.S. at 106, 104 S.Ct. at 911; *Dube,* 900 F.2d at 595. Fry argues, however, that Civil Service Law § 75–b waives New York's sovereign immunity under the Eleventh Amendment, and therefore at least the section 75–b claims against the defendants in their official capacities are not barred by the Eleventh Amendment. In support of this assertion, Fry asserts that because section 75–b allows suit in "any court of competent jurisdiction," New York intended to permit itself to be sued in federal court under this provision.

While a state may consent to jurisdiction in federal court by waiving its sovereign immunity, such a waiver must be expressed unequivocally. *See Florida Dept. of Health and Rehabilitative Services v. Florida Nursing Home Ass'n,* 450 U.S. 147, 150, 101 S.Ct.

1032, 1034–35, 67 L.Ed.2d 132 (1981); *see also Pennhurst,* 465 U.S. at 100–01, 104 S.Ct. at 907–08; *Kirwin v. New York State Office of Mental Health,* 665 F.Supp. 1034, 1038 (E.D.N.Y.1987). As Judge Platt found in *Kirwin,* section 75–b does not provide an express waiver of Eleventh Amendment immunity. Rather, section 75–b, in referring to a "court of competent jurisdiction," also refers to venue provisions in Article 20–C of the New York Labor Law which only have meaning in the New York court system. See N.Y. Labor Law § 740(4)(b); *Kirwin,* 665 F.Supp. at 1038. Thus, section 75–b does not provide for jurisdiction in federal court or act as a waiver of Eleventh Amendment immunity. All the state claims against the defendants in their official capacities are thus barred by the Eleventh Amendment.

Fry concedes that all of her federal claims for monetary relief against the defendants in their official capacities are barred by the Eleventh Amendment. But, as explained above, claims brought under 42 U.S.C. § 1983 for injunctive relief against the defendants in their official capacities are not barred by the Eleventh Amendment. Also for the reasons explained above, all state law claims against the defendants in their official capacities, regardless of the remedy sought, are barred by the Eleventh Amendment. Thus, only Fry's claims against the defendants in their individual capacities, whether arising under state or federal law, and those federal claims seeking reinstatement survive this motion to dismiss.

## II.

The defendants also move to dismiss all of Fry's remaining claims pursuant to Federal Rule of Civil Procedure 12(b)(6). On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true. *Cohen v. Koenig,* 25 F.3d 1168, 1172–73 (2d Cir.1994); *see also Baxter v. A.R. Baron & Co., Inc.,* 1996 WL 586338 at *2 (S.D.N.Y.1996). In addition, all reasonable inferences must be made in the plaintiff's favor. *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *see also Baxter,* 1996 WL 586338 at *2. The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985); *see also Baxter* 1996 WL 586338 at *2. Therefore, the motion should be granted only if it appears that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994); *see also Goldman,* 754 F.2d at 1065; *Baxter,* 1996 WL at 586338 *2.

The defendants argue that all federal claims against McCall must be dismissed because Fry has not pleaded any personal involvement by McCall in her alleged constitutional deprivations. "In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991) (citing *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)); *see also Koehl v. Dalsheim,* 85 F.3d 86, 89 (2d Cir.1996); *Champion v. Artuz,* 76 F.3d 483, 487 (2d Cir.1996). Personal involvement includes, but is not limited to, direct participation in the infraction. *Moffitt,* 950 F.2d at 886.

Fry does plead personal involvement by McCall. Fry alleges that she was dismissed by all of the defendants, not just by Coppie and Scanlon. Moreover, Fry alleges that Coppie told her that he had informed McCall that Fry would not cause any trouble if she was fired. (Second Amended Complaint at ¶ 126). The Second Amended Complaint also alleges that Coppie initially told Fry that she could speak with McCall to make her case. (Id. at ¶ 127). Drawing all inferences in the plaintiff's favor, the Second Amended Complaint alleges that McCall was personally involved in the decision to fire Fry. Thus, it cannot be decided on the basis of the pleadings alone that McCall had no personal involvement in Fry's firing.

### III.

The defendants also seek dismissal of Fry's First Amendment claims. Fry argues that she was dismissed because she complained about the irregularities in the budget process, a matter she contends was of public concern. The defendants argue that Fry was a high level policymaker and a confidential at-will employee. Therefore, according to the defendants, the usual prohibitions on governmental actors firing employees because of their exercise of their First Amendment rights do not apply.

 A public employee may not be terminated due to the exercise of that employee's First Amendment rights. *See Luck v. Mazzone*, 52 F.3d 475, 476 (2d Cir.1995) ("A public employee does not relinquish her First Amendment rights to comment on matters of public interest by virtue of government employment") (citing *Connick v. Myers*, 461 U.S. 138, 140, 103 S.Ct. 1684, 1686, 75 L.Ed.2d 708 (1983) and *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968)); *see also C.V. Rao v. New York City Health and Hospitals Corp.*, 905 F.Supp. 1236, 1240 (S.D.N.Y.1995). To prevail on a claim for wrongful termination in violation of First Amendment free speech rights, a public employee must show (1) that the speech at issue was constitutionally protected and (2) that it was a substantial factor in the decision to terminate the employment. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977); *see also Board of County Commissioners, Wabaunsee County v. Umbehr*, —— U.S. ——, ——–——, 116 S.Ct. 2342, 2347–48, 135 L.Ed.2d 843 (1996); *Ezekwo v. NYC Health & Hospitals Corp.*, 940 F.2d 775, 780 (2d Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991); *C.V. Rao*, 905 F.Supp. at 1240.

 To be protected by the First Amendment and by judicial remedies, speech by a government employee must address a matter of public concern. *See Connick*, 461 U.S. at 140–49, 103 S.Ct. at 1686–91; *see also C.V. Rao*, 905 F.Supp. at 1240. However, speech addressing a matter of public concern will only be protected if the interests of the employee, as a citizen, in commenting upon matters of public concern, outweigh the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *See Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734 ("[T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general"); *see also C.V. Rao*, 905 F.Supp. at 1240–41 (describing this "*Pickering* balancing analysis").

 A government employer may also violate an employee's First Amendment rights by taking adverse employment action against that employee based on the employee's political beliefs or affiliation. "[S]ubjecting a nonconfidential, nonpolicymaking public employee to penalty for exercising rights of political association...." is unconstitutional. *O'Hare Truck Service, Inc. v. City of Northlake*, —— U.S. ——, ——, 116 S.Ct. 2353, 2357, 135 L.Ed.2d 874 (1996) (citing *Elrod v. Burns*, 427 U.S. 347, 359, 96 S.Ct. 2673, 2682–83, 49 L.Ed.2d 547 (1976)). However, the more responsible the position the employee holds, and the more involved in making and implementing policy that employee is, the more latitude the hiring authority has in taking adverse employment action based on political affiliation. Thus, when an employee is a high level "policymaker," the "'question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.'" *O'Hare*, —— U.S. at ——, 116 S.Ct. at 2357 (quoting *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980)); *see also Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Kaluczky v. City of White Plains*, 57 F.3d 202, 208 (2d Cir.1995) ("We use the term 'policymaker' as a 'convenient shorthand' for a government employee who occupies a position for which party affiliation, loyalty or confidence are appropriate"); *Vezzetti v. Pellegrini*, 22 F.3d 483 (2d Cir.1994); *Regan v. Boogertman*, 984 F.2d 577 (2d Cir. 1993).

## A.

■ The defendants argue that Fry was a high level policymaker and a confidential at-will employee and they therefore were entitled to fire her because of her speech. It is clear however, that, unlike those cases where public employees suffered adverse employment consequences because of their political affiliation, when the employee's speech is the alleged motivating factor for adverse employment action, the fact that a public employee was a "policymaker" is not determinative of whether a First Amendment violation has occurred. *See Kaluczky*, 57 F.3d at 210; *see also Regan*, 984 F.2d at 581 (distinguishing firing a policymaker for political reasons from a firing based on the expression of that employee's views). As the Court of Appeals for the Second Circuit explained in *Kaluczky*, "there is no explicit ... policymaker exception to the *Pickering* [balancing analysis]...." *Kaluczky*, 57 F.3d at 210.

■ In contrast to cases in which public employees were treated adversely based on their political affiliation, when employees allege that they were fired for their actual speech, the issue, even for policymakers, is whether the employee's speech is constitutionally protected and whether that speech was a motivating factor in the employee's adverse treatment. *See e.g., Patrick v. Miller*, 953 F.2d 1240 (10th Cir.1992) (city finance director and comptroller alleged he was fired for complaining about discriminatory practices and potential illegalities in the city's budget process); *Vasbinder v. Ambach*, 926 F.2d 1333 (2d Cir.1991) (statewide coordinator of placement services for Office of Vocational Rehabilitation alleged he was fired for reporting wrongdoing to the FBI); *Patteson v. Johnson*, 787 F.2d 1245 (8th Cir. 1986), *cert. denied*, 479 U.S. 828, 107 S.Ct. 109, 93 L.Ed.2d 58 (1986) (deputy state auditor allegedly fired for disclosing irregularities

in the budget); *Lundgren v. Curiale*, 836 F.Supp. 165 (S.D.N.Y.1993) (Deputy Superintendent of New York State Department of Insurance alleged that he was fired because of his allegations of wrongdoing by his supervisors).[2]

This does not mean that the plaintiff's responsibilities and the role she played in the Comptroller's Officer are irrelevant to the question of whether Fry can establish her First Amendment claims. In *Kaluczky*, the Court of Appeals instructed that the same considerations the policymaker exception recognizes for purposes of the political affiliation cases are also relevant in determining whether a public employee can be disciplined for speech. *Kaluczky*, 57 F.3d at 210. These considerations are important for the *Pickering* balancing analysis in determining whether the interest of the public employer, in promoting the efficiency of the public services it performs, outweighs the interest of the employee, as a citizen, in commenting upon matters of public concern. *See Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–35; *see also C.V. Rao*, 905 F.Supp. at 1240. However, there is no per se rule regarding policymakers when adverse employment action is taken against them based on their speech rather than their political affiliation. *See Kaluczky*, 57 F.3d at 210; *see also Regan*, 984 F.2d at 581.

This Court cannot conclude as a matter of law, based on the Complaint, that the *Pickering* balancing analysis requires that the plaintiff's complaints about the discharge of the public duties of the Comptroller's Office should not be afforded First Amendment protection. There are numerous issues of fact as to the role that Fry played at OSDC, the degree to which her position was a specialized technical position, and the degree to which her activities were disruptive. Only based on the full factual record can it be determined whether the interest of the public

---

**2.** At oral argument, the defendants relied primarily on *Volberg v. Pataki*, 917 F.Supp. 909 (N.D.N.Y.), *aff'd*, 1996 WL 601405 (2d Cir. October 17, 1996), in arguing that there is a policymaker exception to the *Pickering* balancing analysis. However, the court in *Volberg*, in rejecting the plaintiff's First Amendment claim, determined that her speech concerned her own em-

ployment situation rather than a matter of public concern. *Id.* at 916. And the court distinguished the speech at issue in that case from those cases where a public employee discloses corruption and mismanagement that is being concealed. *Id.* at 917. In this case, the speech concerned such allegations of public concern rather than the plaintiff's employment situation.

employer, in promoting the efficiency of the public services it performs, outweighs the interest of the employee, as a citizen, in commenting upon matters of public concern.

### B.

■ The defendants also argue that the speech at issue in this case was not constitutionally protected because it was not speech concerning a matter of public concern. Rather, the defendant characterize the speech as limited to the plaintiff's complaints about her personal job evaluation. The Second Amended Complaint, however, alleges that the plaintiff was terminated because she protested that the defendants, allegedly in violation of their responsibilities and at potentially great risk to the City, failed to perform responsibly their duty to assess objectively and professionally the state of the City's finances. These are clearly critical issues of public concern. *See Patrick,* 953 F.2d at 1247–48; *Patteson,* 787 F.2d 1245, 1248; *C.V. Rao,* 905 F.Supp. at 1242–45.

Therefore, the defendants' motion to dismiss the plaintiff's First Amendment claims is denied.

### IV.

### A.

The defendants also move to dismiss the plaintiff's Fourteenth Amendment claims. The defendants argue that Fry has no liberty or property interest in her employment because it was "at-will." Because Fry has no liberty or property interest in her employment, according to the defendants, she can be terminated without being provided with a pre-termination hearing. In response, Fry claims that New York Civil Service Law § 75 provides her with a property interest protected by the Due Process Clause.

■ "When a government employee is found to have a 'property interest' in continuation of his or her employment, the Due Process Clause of the Fourteenth Amendment forbids discharge unless the employee is afforded a pre-termination hearing." *O'Neill v. City of Auburn,* 23 F.3d 685, 688 (2d Cir.1994) (citing *Cleveland Bd. of Educ.*

*v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) and *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); *See also Dwyer,* 777 F.2d at 831. "Property interests in employment are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *O'Neill,* 23 F.3d at 688 (quoting *Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491 and *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709) (internal quotation marks omitted).

■ Fry argues that her property right arises under state law, specifically Civil Service Law § 75–b, which prohibits public employers from retaliating against a public employee because the employee reports wrongdoing to a public agency. See N.Y. Civil Service Law § 75–b. However, Fry has cited no case in which a court found that section 75–b created a property interest recognized by the Fourteenth Amendment.

■ Section 75–b is not the type of state law that provides employees with a protected property interest. Only those laws which create "an enforceable expectation of continued public employment" create such a property interest. *Dwyer,* 777 F.2d at 829; *see also Wright v. Cayan,* 817 F.2d 999, 1002 (2d Cir.), *cert. denied,* 484 U.S. 853, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987). For example under Civil Service Law § 75(1)(a) a person holding a position by permanent appointment may not be removed except for incompetency or misconduct. Because this statute alters the usual rule that employment in New York State is at-will, by allowing dismissal only for cause, it provides covered employees with an enforceable property interest. *O'Neill,* 23 F.3d at 688; *Dwyer,* 777 F.2d at 829.

In contrast, Civil Service Law § 75–b does not alter the employment relationship for a class of employees, but instead provides all employees with protection from being retaliated against because they report governmental misconduct. Thus, while section 75–b provides a cause of action for an employee improperly fired, it does not provide that employee with a property right, because it

does not alter the nature of the employment relationship. Fry was an at-will employee, and therefore has no property interest protectable under the Fourteenth Amendment for which she was entitled to a pre-termination hearing.

## C.

█ Fry argues that even if she has no protected property interest in continued employment, the defendants besmirched her good name and stigmatized her by stating that she was fired because of her inability to get along with her co-workers. Fry argues that this is sufficient to entitle her to a name-clearing hearing.

█ "It is now commonplace that [a person] may have a liberty interest in [her] good name, and if [her] reputation is besmirched by government action, [she] may be entitled to a name-clearing hearing." *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 177 (2d Cir.), *cert. denied*, 502 U.S. 907, 112 S.Ct. 300, 116 L.Ed.2d 244 (1991) (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437–39, 91 S.Ct. 507, 510–11, 27 L.Ed.2d 515 (1971)); *see also Roth*, 408 U.S. at 571, 92 S.Ct. at 2705–06. However, "[n]ot every derogatory statement made about an employee who loses [her] job imposes sufficient stigma to implicate the liberty interest and require a name clearing hearing." *O'Neill*, 23 F.3d at 691. The statements must "'call into question the plaintiff's good name, reputation, honor, or integrity.'" *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir.1980) (quoting *Constantineau*, 400 U.S. at 437, 91 S.Ct. at 510).

█ In this case, Fry only alleges that the defendants publicly stated, and caused to be published, that she was unable to get along with others in her office. It is statements that strike at the heart of an employee's professional competence that entitle that employee to a name-clearing hearing. *See O'Neill*, 23 F.3d 685, 692; *see also Esposito v. Metro–North Commuter Railroad Company*, 856 F.Supp. 799, 804 (S.D.N.Y.1994). The statement that Fry could not get along with her co-workers does not strike at the heart of her professional competence.

In *O'Neill*, the Court of Appeals for the Second Circuit held that statements that an employee had poor relationships with other agencies, even when coupled with public allegations that the employee's work was not "up to par" and was "sloppy" did not create sufficient stigma to require a name clearing hearing. *O'Neill*, 23 F.3d at 692. Therefore, statements that Fry did not get along with her co-workers or superiors, by themselves, are clearly insufficient to require the defendants to provide Fry with a name-clearing hearing.[3]

## V.

## A.

█ In regard to Fry's state law claims, the defendants assert that her claims under Civil Service Law § 75–b must be dismissed because causes of action under that provision can only be maintained against the State itself, not individual state employees. Section 75–b allows suits against "public employers" which the statute defines to include:

(i) the state of New York, (ii) a county, city, town, village or any other political subdivision or civil division of the state, (iii) a school district or any governmental enti-

---

3. At oral argument Fry argued that the justifications given by the defendants for her firing are analogous to those that were at issue in *Huntley v. Community School Board of Brooklyn, New York School District No. 14*, 543 F.2d 979 (2d Cir.), *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1976). In *Huntley*, the Court of Appeals held that Huntley, a school principal, was entitled to a name clearing hearing. *Id.* at 985. In firing Huntley, the school superintendent stated that Huntley had failed to provide necessary leadership, neglected to insure the basic safety of the students at his school, was unable to "maintain a reasonably function-

al educational plant," did not effectively solve or anticipate problems, had been ineffective in implementing recommendations and suggestions to improve the educational environment at his school, failed to effectively utilize the school's resources, and created an educational climate of confusion, disorder and discontent. Only such serious charges, going to the heart of an employee's competence, require a name-clearing hearing. *See Donato v. Plainview–Old Bethpage Central School District*, 96 F.3d 623, 630–31 (2d Cir.1996). The benign reasons given for Fry's dismissal do not even approach in severity those given for Huntley's dismissal.

ty operating a public school, college or university, (iv) a public improvement or special district, (v) a public authority, commission or public benefit corporation, or (vi) any other public corporation, agency, instrumentality or unit of government which exercises governmental power under the laws of the state.

Thus, on its face, section 75–b only provides a cause of action against government entities, not individuals, because it does not include individuals in its definition of public employer.

The only courts that have considered this question have found that individual employees may not be sued under section 75–b. *Kirwin v. New York State Office of Mental Health*, 665 F.Supp. 1034, 1039 (E.D.N.Y. 1987); *Moore v. County of Rockland*, 192 A.D.2d 1021, 1024, 596 N.Y.S.2d 908, 911 (3rd Dep't 1993). The case cited by Fry, in an attempt to demonstrate that there is disagreement between courts on this point, does not support her position. In *Cucchi v. New York City Off–Track Betting Corp.*, 818 F.Supp. 647 (S.D.N.Y.1993), the Court denied the defendants' motion for summary judgment because it found that a cause of action under section 75–b could be maintained even if the employee's report of misconduct was incorrect. *Id.* at 656. This decision to deny summary judgment was not based on a determination of whether individuals could properly be sued under section 75–b. Indeed, one of the defendants in Cucchi was a municipal corporation and the other defendants were individuals sued in their official capacities. *Id.* The court did not consider the issue of claims against state officials in their individual capacities. *Id.* In this case, the claims against the defendants in their official capacities are barred by the Eleventh Amendment. Only those claims against the defendants in their individual capacities remain. Such claims against officials in their individual capacities cannot be maintained under section 75–b and therefore are dismissed.

### B.

■■■ The defendants also move to dismiss Fry's defamation claims. "New York does not recognize a cause of action in tort for abusive or wrongful discharge of an employee ... nor does a cause of action exist for the mere discharge of an employee." *Ullmann v. Norma Kamali, Inc.*, 207 A.D.2d 691, 693, 616 N.Y.S.2d 583, 584 (1st Dep't 1994) (internal citations omitted). "The mere fact of one's removal from office carries no imputation of dishonesty or lack of professional capacity." *Nichols v. Item Publishers*, 309 N.Y. 596, 601, 132 N.E.2d 860 (1956). "It is only when the publication contains an insinuation that the dismissal was for some misconduct that it becomes defamatory." *Id.*

■■■ Fry alleges that she was defamed because the defendants publicly stated that there were personal problems between Fry and other employees in her department. If such a statement was sufficient to give rise to a cause of action for defamation, any public statement by an employer about its reasons for firing an employee would constitute defamation. It is hard to imagine a more innocuous stated reason for firing an employee than the one given to Fry. Stating that there were personal problems between Fry and her co-workers casts no more aspersion on Fry than on any of her co-workers or on the defendants themselves. Finding such a statement to be defamatory would be contrary to well-established New York law. Therefore, Fry's causes of action for defamation are dismissed.

### C.

Finally, the defendants assert that Fry's causes of action for breach of contract must be dismissed because, unless otherwise provided, employment relationships in New York are at will. As a result, the defendants argue, there is no employment contract in this case that can be breached. In response, Fry asserts that there is an exception to this general right of employers to terminate employment contracts at will when the employer is motivated by a constitutionally impermissible purpose or a reason that violates a statutory proscription. *See Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 90–91 (1983); *Mulder v. Donaldson, Lufkin & Jenrette*, 208 A.D.2d 301, 305, 623 N.Y.S.2d 560,

563 (1st Dep't 1995). Fry asserts that because she was fired in violation of her First Amendment rights and her ethical responsibilities, she has stated a breach of contract claim under New York law.

Employers do not have the right to fire their employees in violation of statutory or constitutional mandates. However, such violations give rise to claims under those laws or constitutional protections themselves, they do not create a separate cause of action for breach of contract under New York law. Were it otherwise, any firing in violation of a statute or constitutional mandate would also give rise to a breach of contract claim.

Fry has not cited any case in which a violation of a statute or a constitutional provision created a breach of contract action under New York law. Fry relies primarily on *Wieder v. Skala,* 80 N.Y.2d 628, 593 N.Y.S.2d 752, 609 N.E.2d 105 (1992), in which a law firm allegedly fired an attorney for refusing to compromise ethical rules. In *Wieder,* the Court of Appeals found that specific provisions of the Code of Professional Responsibility bound both the law firm and the discharged associate. *Wieder,* 80 N.Y.2d at 635–38, 593 N.Y.S.2d at 755–57, 609 N.E.2d at 108–10. It was these explicit, written and codified regulations that created an implied-in-law obligation that was breached by the associate's discharge, not the violation of rights created by a statute or constitution. *Id.*

Fry is also incorrect in arguing that she has a breach of contract action, based on *Wieder,* because her firing allegedly violated ethical obligations that bound both herself and the defendants. In *Wieder,* the court found that a breach of contract action arose because the plaintiff's firing violated ethical standards codified in the Code of Professional Responsibility. The Court of Appeals stressed the "distinctive relationship between a law firm and a lawyer hired as an associate," *Wieder,* 80 N.Y.2d at 635, 593 N.Y.S.2d at 755, 609 N.E.2d at 108, and stressed the "unique characteristics of the legal profession" in respect to the Disciplinary Rules at issue in that case. *Wieder,* 80 N.Y.2d at 637, 593 N.Y.S.2d at 756, 609 N.E.2d at 109. *Wieder* is distinguishable from a case in which a plaintiff, like Fry, alleges that her firing violated general ethical requirements.

In fact, as the Court of Appeals explained in *Wieder, Wieder* leaves unchanged the rationale of its earlier decisions in *Murphy* and *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987). *Wieder,* 80 N.Y.2d at 638, 593 N.Y.S.2d at 757, 609 N.E.2d at 110. In *Murphy,* the plaintiff was allegedly fired for disclosure to top management of alleged accounting improprieties on the part of corporate personnel. *Murphy,* 58 N.Y.2d at 301, 461 N.Y.S.2d at 235, 448 N.E.2d at 89. In *Sabetay,* the plaintiff alleged that he was fired in violation of his company's internal ethical standards. *Sabetay,* 69 N.Y.2d at 335, 514 N.Y.S.2d at 212, 506 N.E.2d at 921–22. In both cases, the New York Court of Appeals declined to find a breach of contract action based on the plaintiff's discharge in alleged violation of ethical obligations. Indeed, in *Sabetay,* the Court of Appeals noted that significant alterations in at-will employment relationships are best left to the Legislature rather than developing breach of contract claims. The court noted that the Legislature had in fact enacted numerous protections for at-will employees such as Civil Service Law § 75–b. *Sabetay,* 69 N.Y.2d at 337, 514 N.Y.S.2d at 213, 506 N.E.2d at 922–23. The implication was clear that the circumstances giving rise to an alleged violation of such specific statutory protections did not give rise to an implied breach of contract claim.

The disclosure of the alleged improprieties in this case are far closer to the situations in *Murphy* and *Sabetay* than to *Wieder.* In *Wieder,* the disclosure and discharge was governed by the distinctive Code of Professional Responsibility that bound the law firm and the associate in that case. Here, as in *Sabetay* and *Murphy* there is no such distinctive code that can be implied in law as part of an alleged contract with Fry. Thus, Fry has not stated a breach of contract claim.

## VI.

Finally, the defendants move to strike portions of the Second Amended Complaint pursuant to Federal Rule of Civil Pro-

**668**

cedure 12(f) as immaterial and impertinent. The portions of the pleading the defendants seek to strike provide background information about the political climate at the OSDC and the history of the OSDC and related offices. This motion to strike is premature. "[O]rdinarily neither a district court nor an appellate court should strike a portion of the complaint on the grounds that the material could not be relevant on the sterile field of the pleadings alone." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976).

There is no reason to depart from this practice in this case. While it does appear that portions of the complaint may not be relevant and may not be admissible, those final determinations are best left to the development of discovery in this case. The defendants do not explain how they will be prejudiced by leaving the allegations in the complaint at this point. As trial approaches, this Court will be in a better position to determine whether the allegations the defendants seek to strike are material. If the defendants believe any of this material is prejudicial and should not be put before the jury, they can make an appropriate motion at that time. The motion to strike is therefore denied without prejudice.

### VII.

In summary, (1) the defendants' motion to dismiss claims against McCall, based on his lack of personal involvement is denied; (2) the defendants' motion to dismiss Fry's First Amendment claims, pursuant to 42 U.S.C. § 1983, against the defendants in their individual capacities is denied; (3) the defendants' motion to dismiss Fry's First Amendment claims, pursuant to 42 U.S.C. § 1983, against the defendants in their official capacities is granted except to the extent such claims seek reinstatement; (4) all other claims against the defendants are dismissed; and (5) the defendants' motion to strike portions of the Complaint is denied without prejudice.

**SO ORDERED.**